UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

Haining Zhang and China Venture
Partners, Inc.,

        Plaintiffs,



                                       12 Civ. 1793(ALC) (GWG)

      - against -                    **Memorandum & Order**

Gary H. Schlatter; Oralabs, Inc.; Robert C. Gust;
Michael I. Friess; Allen R. Goldstone; Creative
Business Strategies, Inc.; China Precision Steel,
Inc.; Belmont Capital Group Limited; Henny
Wee & Co; Soon Chiang Henny Wee; Kam Kau
Eddie Wong; Edwon, Inc.; Hung Wan;
Advanz Capital, Inc.; and OraLabs Holding Corp.,

        Defendants.
-----------------------------------------------------------X

ANDREW L. CARTER, JR., United States District Judge:

### INTRODUCTION

Plaintiffs Haining Zhang and China Venture Partners (collectively "Plaintiffs") commenced

this action on March 9, 2012 pursuant to the Racketeer Influenced and Corrupt Organizations Act

("RICO"), 28 U.S.C. § 1961, et seq., breach of contract, breach of exclusive dealings contract, breach

of contract – *quantum meruit*, intentional interference with contractual relationships, negligent

interference with prospective advantage, civil conspiracy, fraudulent misrepresentation,

misappropriation of trade secrets, misappropriation of confidential and proprietary data, defamation,

and unjust enrichment.

On or about November 30, 2011, Plaintiff Haining Zhang ("Zhang"), as a *Pro Se* litigant,

commenced a state action against Defendants Gary H. Schlatter, OraLabs, Inc., Robert C. Gust,

1

Michael I. Friess, Allen R. Goldstone, Creative Business Strategies, Inc., Belmont Capital Group Limited, Henny Wee & Co., Advanz Capital, Inc., Edwon, Inc., Hung Wan, Soon Chiang Henny Wee, and Kam Kau Eddie Wong in the Supreme Court of the State of New York, in which he alleged the same nucleus of operative facts governing the instant federal action. (First Amended Complaint ("FAC") at ¶ 151.) On or about March 16, 2012, Zhang voluntarily discontinued the state action without prejudice as to all Defendants, electing instead to seek redress in federal court. (FAC at ¶ 152.)

Plaintiffs allege that Belmont Capital Group Limited ("Belmont Capital") and Henny Wee & Co. represented to China Venture Partners ("CVP") that it would receive compensation for its services in exchange for providing confidential data and resources which were essential to bringing about a reverse merger between OraLabs Holding Corp. and an Asia-based entity. (FAC at ¶¶ 134, 137, 143.) Belmont Capital and Henny Wee & Co. allegedly did not actually intend to compensate CVP for this information, but rather intended to use the confidential data and resources to pursue another reverse merger for OraLabs Holding Corp. (FAC at ¶¶ 135, 144.)

Plaintiffs collectively refer to Defendants Gary H. Schlatter, OraLabs, Inc., Robert C. Gust, Michael I. Friess, Allen R. Goldstone, and Creative Business Strategies, Inc. as "OraLabs Defendants." Defendants Belmont Capital, Henny Wee & Co., Soon Chiang Henny Wee, Eddie Wong Kam Kau, Hung (Tracy) Wan, Edwon, Inc., Advanz Capital, Inc. are collectively referred as "Belmont Defendants."

This matter is before the court on the defendants' motion to dismiss. This Court now GRANTS Defendants' motion to dismiss on the basis that the statutes of limitations bar Plaintiffs' remaining causes of action and Plaintiffs fail to state valid claims.

## BACKGROUND

2

Plaintiff CVP is a Delaware corporation that provided consulting services to assist U.S. companies in securing mergers and acquisitions with foreign companies, especially Asia based companies. (FAC at ¶¶ 7, 27, 37.) Plaintiff Zhang is the principal and sole member of CVP. (FAC at ¶ 37.)

Defendant Gary H. Schlatter ("Schlatter") is the President of OraLabs, Inc ("OraLabs"). OraLabs was the wholly-owned subsidiary of OraLabs Holding Corp, a publicly-traded company. (OraLabs Memo. at 3.) Defendants Robert C. Gust ("Gust"), Michael I. Friess ("Friess"), and Allen R. Goldstone ("Goldstone") were, at all relevant times, Directors of OraLabs Holding. (FAC at ¶¶ 10-12.)

Defendant Creative Business Strategies, Inc. ("CBSI") is a company owned by Friess and Goldstone. The FAC did not assert any causes of action against CBSI. Plaintiffs' Opposition dismissed CBSI without prejudice.

Defendant Belmont Capital is based in Hong Kong and provides corporate finance investment services for Asia-based entities seeking to become listed in the U.S. via reverse merger. (*See* FAC at ¶¶ 14, 36.) The Executive Director of Belmont Capital at all times relevant to this action was Hung Wan ("Wan"). (*See* FAC at ¶ 60.) Henny Wee ("Wee") and Eddie Wong ("Wong") were, at certain times, Directors of Belmont Capital. (*See* FAC at ¶¶ 29-30.) However, Wee was also the principal of Henny Wee & Co., a sole proprietorship providing accounting services in Hong Kong. (FAC at ¶¶ 32-33.)

Plaintiffs allege that OraLabs retained CVP to locate and secure a reverse merger partner for OraLabs. (FAC at ¶¶ 41, 45.) Defendant Goldstone allegedly executed a Non-Disclosure/Non-Circumvention Agreement dated October 30, 2003 on behalf of OraLabs Holding Corp., with Zhang, signing on behalf of CVP. (FAC at ¶ 41.)

3

Subsequently, without disclosing its relationship with OraLabs, CVP entered into a joint consulting agreement with Belmont Capital. (FAC at ¶ 60.) Together, CVP and Belmont Capital agreed to represent China-based NVC Lighting Investments Holding Limited ("NVC Holdings") in its attempt to acquire a U.S. company by reverse merger. (FAC at ¶¶ 62, 63.) In November 2004, NVC Holdings retained CVP and Belmont Capital as consultants to help the company go public via reverse merger with a U.S. Shell company. (*Exhibit 3* to Declaration of Charles B. Goodwin ("the Consulting Agreement"); *see also* FAC ¶ 64.) The parties to the Consulting Agreement were NVC Holdings, CVP, and Belmont Capital. (*Exhibit 3* at ¶ 1.) The Consulting Agreement provided that CVP and Belmont Capital would use their best efforts "to assist NVC Holdings in the acquisition of a listed shell company for the purpose of a reverse merger." (*Id.* at ¶ III(B).) CVP recommended OraLabs as an appropriate target. (FAC at ¶ 61.) Thus, as OraLabs and NVC Holdings pursued their reverse merger, CVP was representing both parties to the transaction.

Although OraLabs and NVC Holdings executed a letter of intent and stock exchange agreement, NVC Holdings ultimately decided not to pursue the transaction. (FAC at ¶¶ 73-75.) Zhang allegedly made several attempts to contact NVC Holdings to try to salvage the reverse merger with OraLabs, but these efforts were unsuccessful. (FAC at ¶ 76.)  In December of 2005, Zhang subsequently contacted OraLabs to propose another potential reverse merger candidate, but Friess allegedly told him that OraLabs was no longer seeking to reorganize its corporate structure. (FAC at ¶¶ 77-78.)

Subsequently, Schlatter contacted Wee, who had been the independent auditor for NVC Holdings, and asked whether he was aware of another Chinese company that might be interested in a reverse merger with OraLabs. (FAC at ¶ 91.) OraLabs was still interested in pursuing a reverse merger with an Asian company. (*Id.*)

4

Wee put OraLabs in contact with Belmont Capital. Wee suggested Partner Success Holdings Limited ("PSHL")[1], a British Virgin Islands company that controlled a steel mill in China, as a candidate for a reverse merger with OraLabs. (FAC at ¶ 103.) Plaintiffs claim that this recommendation was based on the information that CVP supplied to Belmont Capital and its alleged agent Wong. (FAC at ¶ 92.) Thereafter, PSHL retained Belmont Capital to assist in completing the reverse merger with OraLabs. (FAC at ¶ 94.) Plaintiffs allege that Wan, Belmont Capital, Wong, Edwon, Inc., and Wee were all retained as advisors to PSHL in connection with the transaction. (FAC at ¶ 104.)

Ultimately, Belmont Capital became a consultant to a second reverse merger candidate. Wee, Wong, and Wan actively negotiated a separate reverse merger deal with OraLabs Holding and PSHL. (FAC at ¶¶ 92-94.) PSHL executed a reverse merger agreement with OraLabs on or about March 31, 2006. (FAC at ¶ 80.) CVP was not involved in this transaction. The reverse merger between OraLabs and PSHL was announced on or about April 6, 2006. (Complaint (Docket No. 1) at ¶ 52). The merger between OraLabs and PSHL was finalized on December 26, 2006. (*Id.* at ¶ 57.)

Plaintiffs alleged in the original Complaint that Zhang learned of the planned reverse merger between OraLabs and PSHL in April 2006, and learned of the completion of the transaction in December 2006. (*Id.* at ¶¶ 52-53, 59.) Specifically, Plaintiffs alleged that on the day the OraLabs-PSHL merger was announced, April 6, 2006, Zhang notified Goldstone that OraLabs had breached the Non-Circumvention Agreement by excluding him from the OraLabs-PSHL transaction and Goldstone "acknowledged the breach." (*Id.* at ¶ 53.) Plaintiffs further alleged that, in November 2006, Zhang told Schlatter of OraLabs that OraLabs had breached the Non-Circumvention Agreement and Schlatter

---

[1] PSHL was later named China Precision Steel, Inc. ("CPSI").

"acknowledged such breach . . . ." (*Id.* at ¶ 56.) The OraLabs/PSHL reverse merger closed on

December 26, 2006. *Id.* at ¶ 57:

> In or about December 28, 2006, *upon learning of the foregoing facts*, Plaintiff Haining Zhang sent numerous correspondence pertaining to the breach and made countless phone calls to Defendants Soon Chiang Henry Wee, Hung Wan, Kam Kau Eddie Wong, Belmont Capital Group Limited, Creative Business Strategies, Inc., China Precision Steel, Inc., Allan R. Goldstone, Michael I. Friess, Gary H. Schlatter and OraLabs, Inc., seeking to address the breach of the Non Disclosure and Non Circumvention Agreement and the cooperation agreement, all to no avail.

(*Id.* at ¶ 59) (emphasis added).

Zhang filed his first Complaint in New York Supreme Court on November 30, 2011. *See Zhang*

*v. Gary Schlatter, et al.*, Index No. 11-cv-113470. Acting *pro se*, Zhang dismissed that action and filed

a Complaint in the United States District Court for the Southern District of New York on March 9,

2012. Zhang then retained counsel in April 2012.

On May 23, 2012, Defendants CBSI, Friess, Goldstone, Gust, OraLabs, and Schlatter filed a

motion to dismiss on statute of limitations defenses, which was terminated when Plaintiffs requested a

pre-motion conference to amend the complaint.

Plaintiffs filed an amended complaint on June 11, 2012. (Docket No. 44) Their FAC alleges for

the first time that Zhang was unaware of the defendants' acts until September 2010, more than four

years later than originally pled in both the state and federal actions. (FAC at ¶¶ 86-87, 90.)

On June 29, 2012, Defendants CPSI and OraLabs Holding Corp. moved to dismiss on the

grounds that (i) nearly all of Plaintiffs' claims are time-barred by the applicable statutes of limitations;

and (ii); Plaintiffs failed to state valid causes of action against either CPSI or OraLabs Holding Corp.

(Docket No. 62.)

On June 29, 2012, OraLabs Defendants moved to dismiss on the grounds that (i) nearly all of Plaintiffs' claims are time-barred by the applicable statutes of limitations; and (ii); Plaintiffs failed to state valid causes of action against OraLabs Defendants. (Docket No. 65.)

On July 2, 2012, Belmont Defendants moved to dismiss on the grounds that (i) each of Plaintiffs' claims is time-barred under the applicable statutes of limitations, except the breach of contract claim against Belmont Capital, the only defendant who had a contractual relationship with CVP; (ii); Zhang lacks standing to sue on any of the contracts identified in the FAC; and (iii) Plaintiffs' claim for *quantum meruit* is barred by the statute of frauds. (Docket No. 72.) Belmont Defendants additionally, or in the alternative, moved to compel arbitration of CVP's breach of contract claim against Defendant Belmont Capital.

OraLabs Defendants and Belmont Defendants argue that the individual defendants Schlatter, Gust, Friess, Goldstone, Wee, Wong, and Wan cannot be held liable because they did not enter into any agreements with Zhang, or alternatively, any agreements between the parties were executed between the corporate entities and Zhang. (OraLabs Memo. at 15-16; OraLabs Holding Memo. at 2-3; 17-18; Belmont Memo. at 20.)

On August 16, 2012, Plaintiffs filed an omnibus Opposition to the Motion to Dismiss (Docket No. 95), which admits that Zhang had previously informed the defendants of his knowledge that they had violated the applicable agreements when they secretly collaborated on the OraLabs Holding/PSHL reverse merger deal. Zhang was aware of the reverse merger in April 2006 and not in September 2010. Thus, Plaintiffs conceded that the statues of limitations barred many claims and thereby dismissed: (1) RICO, as alleged against all corporate Defendants; (2) intentional interference with contractual relationships, as alleged against the Belmont Defendants; (3) interference with prospective advantage, as alleged against the Belmont Defendants; (4) defamation, as alleged against the Belmont Defendants; (5) civil conspiracy, as alleged against all Defendants; (6) breach of exclusive dealings contract, as

7

alleged against the OraLabs Defendants; (7) misappropriation of trade secrets, as alleged against the

OraLabs Defendants; and (8) misappropriation of confidential and proprietary data, as alleged against

the OraLabs Defendants.

While Plaintiffs dismissed their RICO cause of action and only state law claims remain, they

argued that this Court retains subject matter jurisdiction under diversity jurisdiction pursuant to 28

U.S.C. § 1332. CVP is incorporated in Delaware. Zhang is domiciled in New York. Defendants

OraLabs Holdings Corp. and OraLabs, Inc. are incorporated in Colorado. The individually named

OraLabs Defendants are domiciled in Colorado. Defendants Belmont Capital and Henny Wee & Co.

are incorporated in Hong Kong, Special Administrative Region of the People's Republic of China. The

individually named Belmont Defendants are citizens of Hong Kong. The amount in controversy

exceeds $75,000. (FAC at ¶¶ 6-20.)

On August 31, 2012, Plaintiffs filed a motion to strike or in the alternative for leave to file a

sur-reply brief concerning three arguments that OraLabs Defendants argue for the first time on reply.

First, OraLabs Defendants argue that, "Plaintiffs admit that any breach of the Agreement occurred in

December 2005, and the six-year statute of limitations commenced at that time. Because Plaintiffs

failed to initiate this action before December 2011, their breach of contract claims is time-barred and

should be dismissed." (OraLabs Reply Br. at 4.) Second, OraLabs Defendant argue that the statue of

limitations began to run somewhere "from December of 2005 through February of 2006." (OraLabs

Reply Br. at 4, 5.) Third, OraLabs Defendants argue that the fraud claims require dismissal because

"the alternative six or two year statutes of limitation ran in December, 2011 and April, 2008,

respectively, in either case before Plaintiffs initiated this action." (OraLabs Reply Br. at 8.)

On September 5, 2012, OraLabs Defendants responded to Plaintiffs' Motion to Strike. OraLabs

Defendants explained that their reply addressed new material issues based on Plaintiffs' newly

8

admitted timeline in their Memo in Opposition. Since Plaintiffs' Opposition admitted that their FAC changed the timeline of facts, ostensibly in order to circumvent the statute of limitations, this Court now DENIES Plaintiffs' Motion to Strike and request to file a sur-reply in its entirety. The following discusses Plaintiffs' remaining contract, fraud, and *quantum meruit* claims.

## DISCUSSION

### A. Legal Standard for a Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills,* 572 F.3d 66 (2d Cir. 2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009)). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal,* 129 S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal,* 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal,* 129 S.Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *In re NYSE Specialists Secs. Litig.,* 503 F.3d 89, 91 (2d Cir. 2007). Only if this Court is satisfied that "the complaint cannot state any set of facts

that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed.R.Civ.P. 12(b)(6). *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir. 1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.,* 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

For the reasons that follow, the Court agrees with the Defendants' motions to dismiss.

## B. Breach of Contract

"To make out a viable claim for breach of contract, a 'complaint need only allege (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages.'" *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996)).

A cause of action for breach of contract is governed by a six-year statute of limitations under Section 213(2) of the New York Civil Practice Law and Rules. *See Guilbert v. Gardner,* 480 F.3d 140, 149 (2d Cir. 2007); *Hahn Automotive Warehouse, Inc. v. American Zurich Ins. Co.,* 18 N.Y.3d 765, 770, 944 N.Y.S.2d 742, 967 N.E.2d 1187 (N.Y. 2012). Generally, under New York law, a cause of action for breach of contract accrues, and the limitations period begins to run, at the time of the breach, whether or not the plaintiff was aware of the breach. *See Guilbert,* 480 F.3d at 149 ("The plaintiff need not be aware of the breach or wrong to start the [limitations] period running."); *Raine v. RKO General, Inc.,* 138 F.3d 90, 93 (2d Cir. 1998); *Hahn Automotive,* 18 N.Y.3d at 770, 944 N.Y.S.2d 742, 967 N.E.2d 1187; *Jobim v. Songs of Universal, Inc.,* 732 F.Supp.2d 407, 422 (S.D.N.Y. 2010).

1. Plaintiffs' breach of contract claim against the OraLabs Defendants, OraLabs Holding Corp. and individual Defendants

10

Plaintiffs allege breach of contract against both OraLabs Holding Corp. and OraLabs, together with the individual OraLabs Defendants Schlatter, Gust, Friess, and Goldstone. This breach of contract claim is based solely upon the Non-Disclosure/Non-Circumvention Agreement that Goldstone and Zhang executed on behalf of CVP (the "Agreement"). Plaintiffs allege that Defendants Schlatter, Wee, and Wan directly breached the Agreement on December 2, 2005. (FAC at ¶ 97.) Thus, Plaintiffs admit that any breach of the Agreement occurred in December of 2005, and the six-year statute of limitations commenced at that time. Plaintiffs' breach of contract claim is time-barred and is dismissed against OraLabs Holding Corp. and OraLabs because they failed to initiate this action before December 2011.

Goldstone is the only one of the OraLabs Defendants who is party to the Agreement. Plaintiffs have alleged that Goldstone signed the Agreement as an agent of OraLabs Holding Corp., not OraLabs or any of the individual OraLabs Defendants. (*See* Pls.' Opposition at 8.) Pursuant to Colorado law, which Plaintiffs correctly state applies here, "officers of a corporation acting in their official capacity generally cannot be liable for inducing the corporation to breach a contract… In rare circumstances, a corporate officer can be held liable for inducing the corporation to breach a contract … where a corporate officer is motivated 'by a desire to harm one of the contracting parties or to interfere in contractual relations between the parties.'" *Powell Products, Inc. v. Marks*, 948 F.Supp. 1469, 1478 (D. Colo. 1996) (citations omitted). Plaintiffs have not shown that the individual OraLabs Defendants were motivated by any "personal animus" or acted in any way outside the scope of their official duties as either officers or directors of OraLabs Holding Corp. *See id.*

Furthermore, Plaintiffs have not alleged any fact to support a claim that the corporate veil should be pierced in order to hold the individual OraLabs Defendants personally liable for any breach or wrongdoing. Colorado courts consider a variety of factors in veil piercing, none of which Plaintiffs have addressed. *See McCallum Family L.L.C. v. Winger*, 221 P.3d 69, 73 (Colo. App. 2009). Plaintiffs admit that Zhang's sole purpose was finding a merger candidate for OraLabs Holding Corp. during the

11

entire time that he was allegedly searching for candidates and interacting with the individual OraLabs

Defendants. Moreover, Plaintiffs state that, "There is no evidentiary basis to support the argument that

Mr. Zhang had a consulting relationship with any of [the individual OraLabs Defendants] on an

individual basis, separate and apart from his work for OraLabs Holding." (Pls.' Opposition at 8-9.) No

factual allegations support individual liability by the OraLabs Holdings directors or officers, and, as

such, all claims against Schlatter, Gust, Friess and Goldstone are dismissed. *Georgia Malone & Co. v.*

*Rieder*, 86 A.D.3d 406, 408 (N.Y.A.D. 2011) ("It is well established that officers or agents of a

company are not personally liable on a contract if they do not purport to bind themselves

individually."), *aff'd*, 2012 WL 2428246 (N.Y. 2012); *Oladokun v. Ryan*, 2011 WL 4471882, at \*13

(S.D.N.Y. Sept. 27, 2011).

### 2. Plaintiffs' breach of contract claim against the Belmont Defendants

Although the FAC described numerous contracts between Belmont Capital and CVP, the claim

for breach of contract sought relief only for the Belmont Defendants' alleged breach of the Reverse

Merger and Cooperation Agreement ("Cooperation Agreement"). (FAC at ¶¶ 164-171.) The only

parties to this contract are Belmont Capital and CVP. (Declaration of Charles B. Goodwin ("Goodwin

Decl.") at Exh. 2 (Docket No. 73-2).)

Wan, Wee, Henny Wee & Co., Wong, Edwon, Inc. and Advanz Capital, Inc. were not parties to

the Cooperation Agreement. Wan argues that she executed the Cooperation Agreement on behalf of

Belmont Capital in her representative capacity as Executive Director of Belmont Capital, and not in

her individual capacity. Therefore, she would not be liable for breach of the contract.

Belmont Defendants argue that Zhang lacks standing to pursue a claim for breach of the

Cooperation Agreement because he executed the contract only as the Director of CVP, and not in his

individual capacity. (Belmont Memo. (Docket No. 74) at 19-20.) In their Opposition brief, Plaintiffs

acknowledge that the Cooperation Agreement was entered into "between Mr. Zhang, on behalf of

12

CVP, and Ms. Wan, on behalf of Belmont Capital." Pls.' Opposition at 25, 26. Plaintiffs thus do not contend that Zhang was a party to the contract. Nor do they assert that he was a third-party beneficiary. Instead, they argue that Zhang has standing because the Belmont Defendants' alleged breach of the Cooperation Agreement "directly harmed" him. *Id.* at 28. While a limited number of cases observe that a non-party has standing to challenge a contract where he has suffered "direct harm flowing from the contract," *see, e.g., Descolator, Cohen & DiPrisco v. Lysaght, Lysaght & Kramer*, 304 A.D.2d 86, 90 (N.Y.A.D. 1st Dep't 2003), *P.A. Building Co. v. City of New York*, 217 A.D.2d 417 (N.Y.A.D. 1st Dep't 1995), these cases each involved a plaintiff challenging a contract as illegal or invalid *ab initio*. They do not grant standing to a non-party to sue for breach of a valid agreement. *See, e.g., Big Apple Consulting USA, Inc. v. Belmont Partners, LLC*, 873 N.Y.S.2d 232, 2008 WL 4210533, *2 (N.Y. Sup. Sept. 15, 2008) (dismissing breach of contract claim, holding that, "[i]n order to have standing to challenge or enforce a contract, an entity must be a party thereto or a third-party beneficiary thereof.").

In any event, the harm allegedly suffered by Zhang is clearly not "direct," but is derivative of the harm to CVP, the proper plaintiff. The Cooperation Agreement provides that any fees for services were to be shared by the "parties" (i.e., CVP and Belmont Capital), and were not to be paid directly to Zhang. (*See* Goodwin Decl., Exh. 2 at ¶ 2.) Thus, Zhang would gain or lose under the Cooperation Agreement only as a director or shareholder of CVP. Accordingly, Zhang lacks standing to pursue his contract claim. Zhang's claim is dismissed for lack of standing because he was not a party to the Cooperation Agreement, which is the only contract Plaintiffs allege that the Belmont Defendants breached.

Belmont Defendants argue that the Plaintiffs may not pursue their contract claim against the Belmont Defendants other than Belmont Capital because they were not parties to the contract with CVP. (Belmont Memo. at 20.) In response, Plaintiffs argue that, where an officer of a corporation acts in bad faith with regard to performance of a contract, the court may pierce the corporate veil and hold

13

the director individually liable on the contract. *See* Pls.' Opposition at 38 (citing *Ledy v. Wilson*, 38 A.D.3d 214, 215 (N.Y.A.D. 1st Dep't 2007); *First Bank of Ams. v. Motor Car Funding*, 257 A.D.2d 287, 294 (N.Y.A.D. 1st Dep't 1999)). This bare statement of law does not salvage Plaintiffs' contract claim against the other Belmont Defendants.

"New York courts 'disregard corporate form reluctantly.'" *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 17 (2d Cir. 1996) (citations omitted). In order to pierce the corporate veil and hold an individual shareholder or director liable for a corporation's breach of contract, a plaintiff must show that "(1) 'the owners exercised complete domination of the corporation in respect to the transaction attacked, and (2) such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'" *Savage v. Galaxy Media & Marketing Corp.*, No. 11 Civ. 6791 (NRB), 2012 WL 2681423, *4 (S.D.N.Y. July 5, 2012) (quoting *Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 145 (1993)). The complaint must contain factual allegations that "actively and plausibly suggest" how the exercise of domination took place and conclusory allegations of control are insufficient. *See, e.g., Amusement Industry, Inc. v. Midland Avenue Associates, LLC,* 820 F.Supp.2d 510, 540 (S.D.N.Y. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *Apex Maritime Co., Inc. v. OHM Enterprises, Inc.*, 2011 WL 1226377, *4 (S.D.N.Y. March 31, 2011). "'Factors to be considered by a court in determining whether to pierce the corporate veil include failure to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use.'" *Modern Indus. Firebrick Corp. v. Shenango Inc.*, 2012 WL 2405236, *7 (W.D.N.Y. June 25, 2012) (quoting *Millennium Constr., LLC v. Loupolover*, 44 A.D.3d 1016, 1016-17 (N.Y.A.D. 2nd Dep't 2007)).

Here, Plaintiffs have made none of the required allegations. First, the FAC does not even ask the Court to pierce the corporate veil. Second, the FAC contains no allegations from which the Court could, *sua sponte*, conclude that piercing of the corporate veil is appropriate. The FAC does not allege

14

that any of the Belmont Defendants exercised "complete domination" over Belmont Capital with regard to the OraLabs reverse merger with PSHL. Neither does the FAC allege that Belmont Capital failed to adhere to corporate formalities, was inadequately capitalized, commingled assets with those of any of the other Belmont Defendants, or that corporate funds were used for personal purposes. Finally, the FAC does not allege how the Belmont Defendants' "domination" over Belmont Capital was used to commit a fraud against Plaintiffs, an allegation which would be subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). *See, e.g., Ningbo Prods. Import & Export Co., Ltd. v. Eliau*, 2011 WL 5142756, *6 (S.D.N.Y. Oct. 31, 2011).

Because the Belmont Defendants (other than Belmont Capital) are not parties to the Cooperation Agreement and the FAC does not allege facts justifying piercing the corporate veil, Plaintiffs' breach of contract claim against the other Belmont Defendants is dismissed.

CVP's claim for breach of contract against Belmont Capital is subject to binding arbitration in Hong Kong. The Cooperation Agreement contains an arbitration clause which provides: "Any controversy, dispute or claim regarding the interpretation or performance of this Agreement shall be resolved by binding arbitration, at the request of either party, in accordance with the rules of the Hong Kong Arbitration Association." (Goodwin Decl. at Exhibit 2, ¶ 10.) Because Belmont Capital and CVP agreed to an arbitration clause of the broadest possible scope, the plain language of the Cooperation Agreement requires that CVP's claim for breach of contract must be resolved through arbitration. (Belmont Memo. at 22-25.)

Plaintiffs acknowledge that this Court "may enforce the clause at issue herein pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards," 9 U.S.C. §§ 201-208 ("the Convention"), where there is an express agreement to that effect. (Pls.' Opposition at 29.) Plaintiffs argue, however, that the language of the arbitration clause in the Cooperation Agreement does not necessarily reflect an intent to arbitrate because Belmont Capital and CVP executed at least

15

three other agreements that lack arbitration clauses. *Id.* at 28-30. This argument is meritless. Although the FAC describes numerous contracts between CVP and Belmont Capital, only the Cooperation Agreement is at issue in Plaintiffs' claim for breach of contract. (*See* FAC at ¶¶ 164-171; *see also* FAC at ¶ 153.) Because Plaintiffs have not sued the Belmont Defendants for breach of the other agreements, it is immaterial whether those agreements contained an arbitration clause. The Cooperation Agreement reflects a clear intent to arbitrate claims regarding the parties' performance or non-performance of their duties under the contract.

Upon finding an agreement to arbitrate, a federal court "must compel arbitration of any dispute falling within the scope of the agreement...." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 146 (2d Cir. 2001). The only exception to this mandatory duty is if the court finds that the agreement in question is "null and void, inoperative or incapable of being performed." 9 U.S.C. § 201. The scope of the "null and void clause" in the Convention was "limited" and "'must be interpreted to encompass only those situations – such as fraud, mistake, duress, and waiver – that can be applied neutrally on an international scale.'" *Id.; Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2005) (citations omitted).

The arbitration clause in the Cooperation Agreement should be enforced in light of the strong federal preference for arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (holding that, "[b]y its terms, the [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in the original). Here, there is a six-year limitations period for contract claims in Hong Kong, just as there is in New York. Plaintiffs chose not to initiate arbitration in the agreed forum, but instead pursue an action in a non-agreed forum (this Court). The fact that such decision may have an adverse effect on Plaintiffs does not nullify the underlying arbitration provision; it just means that Plaintiffs failed to

16

take the steps required for performance. Public policy may preclude arbitration "only when enforcement would 'violate the forum state's most basic notions of morality and justice.'" *Belship Navigation, Inc. v. Sealift, Inc.*, 1995 WL 447656 (S.D.N.Y. July 28, 1995) (citations omitted). Requiring a plaintiff to abide by statutes of limitations does not offend public policy or justice.

**C. Fraud**

The elements of a fraudulent misrepresentation claim under New York law are: "'(1) [that the] defendant made a material misrepresentation of fact; (2) that the misrepresentation was made intentionally in order to defraud or mislead the plaintiff; (3) that the plaintiff reasonably relied on the misrepresentation; [and] (4) that the plaintiff suffered damage as a result of its reliance on the defendant's misrepresentation.'" *Lenard v. Design Studio,* No. 08 Civ. 10560, 2012 WL 3642402, at *6 (S.D.N.Y. Aug. 24, 2012) (quoting *Harding v. Naseman,* No. 07 Civ. 8767, 2009 WL 1953041, at *20 (S.D.N.Y. July 8, 2009)).

Where a complaint contains claims for both fraud and breach of contract, a plaintiff must distinguish between those claims. *Papa's–June Music, Inc. v. McLean*, 921 F.Supp. 1154, 1161 (S.D.N.Y 1996) ("To maintain a claim for fraud, a plaintiff must allege (1) a legal duty separate and apart from the contractual duty to perform; (2) a fraudulent misrepresentation collateral or extraneous to the contract; or (3) special damages proximately caused by the fraudulent misrepresentation" and unrecoverable as contract damages.) (internal citations omitted).

Plaintiffs here have not alleged a fraud claim that is sufficiently distinct from any viable contract claim. Plaintiffs have not alleged that they relied, let alone reasonably relied, on any of defendants' statements. Plaintiffs allege only that the OraLabs Defendants falsely stated they would not breach an express agreement, after the alleged contract had been formed. Plaintiffs' fraudulent misrepresentation claim is redundant of their breach of contract claim, and is, therefore, dismissed for failure to state a claim.

17

Additionally, an actionable claim for fraud requires out-of-pocket losses, which plaintiffs have not alleged. New York limits recoveries in fraud claims to actual losses sustained as the direct result of the wrong alleged and excludes expected profits. *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 421 (1996) (citing *Reno v. Bull*, 226 N.Y. 546, 553 (1919)). Plaintiffs have not alleged any out-of-pocket losses. Rather, Plaintiffs have represented that their damages "are grounded in the compensation which would have been realized but for the [Belmont Defendants'] breach of the Reverse Merger Cooperation agreement and the U.S. based Defendants [sic] breach of the Non-Disclosure and Non-Circumvention agreement . . . ." (FAC at ¶ 153.) Plaintiffs' alleged damages do not support a fraud claim because under the rule, "there can be no recovery of profits which would have been realized in the absence of fraud." *Lama*, 88 N.Y.2d at 421.

Plaintiffs' fraudulent misrepresentation claim against the OraLabs Defendants is based solely on one factual allegation that Defendants Schlatter, Goldstone, and Friess each told Zhang in April of 2006 that a reverse merger had not and would not take place with PSHL, later named CPSI. (FAC at ¶¶ 110-13.) Plaintiffs have admitted that on April 6, 2006, OraLabs Holding Corp. publicly announced its merger with PSHL and that Zhang was aware of the merger from his review of the SEC filing. (Pls.' Opposition at 7.) Considering Zhang's knowledge of the SEC filing publicly announcing the OraLabs Holding Corp.-PSHL merger at the time when this alleged fraudulent statement was made, Plaintiffs could not have reasonably relied on it.

Pursuant to New York law, claims arising in fraud are governed by a six-year statute of limitations running from the occurrence of the alleged fraud, or two years running from the time the Plaintiff discovered, or could have discovered, the fraud, whichever is longer. *See In re Neidich*, 290 A.D.2d 557, 558, 736 N.Y.S.2d (2d Dep't 2002); *see also* N.Y. C.P.L.R. 213(8). Plaintiffs allege that in December of 2005 Defendant Schlatter represented to Zhang that OraLabs Holding Corp. was no longer seeking to reorganize its corporate structure or would instead merge with an ORCBB shell

18

company. (FAC at ¶ 78.) Plaintiffs also admit that they were aware of the pending reverse merger with

PSHL, and consequently, the alleged fraud, as early as April 6, 2006. (Pls.' Opposition at 5, 7.)

Accordingly, the alternative six or two year statutes of limitation ran in December 2011 and April

2008, respectively, in either case before Plaintiffs initiated this action. Thus, Plaintiffs' fraudulent

misrepresentation claim is also time-barred and dismissed.

Here, the FAC contains no allegations that the OraLabs Defendants occupied a position of trust

or special confidence with Plaintiffs that imposed any obligations beyond the express agreement. Nor

does the FAC indicate that Plaintiffs relied on the OraLabs Defendants for advice of judgment based

on superior information or professional expertise. Any allegations to the contrary were raised by the

Plaintiffs for the first time in their Opposition. Because they were not made in the FAC as required, the

Court cannot consider them here. *See, e.g., Popore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009)

(deeming argument waived when plaintiff raised it in reply brief but failed to raise it in opening brief);

*Fisher v. Kanas*, 487 F. Supp. 2d 270, 278 (E.D.N.Y. 2007) (collecting cases).

### D. *Quantum Meruit*/Unjust enrichment

Under New York law, the elements of an unjust enrichment claim are that: "(1) the defendant

benefitted; (2) at the plaintiff's expense; and (3) equity and good conscience require restitution."

*Federal Treasury Enter. Sojuzplodoimport v. Spirits Intern. N.V.,* 400 Fed. App'x 611, 613 (2d Cir.

2010).

*Quantum meruit* is a quasi-contractual, equitable remedy that is only available if there is not an

enforceable contract. *See Wehrum v. Illmensee*, 74 A.D.3d 796, 797 (2d Dep't 2010) (holding that

because there was no enforceable contract, the plaintiff could recover in *quantum meruit*). Plaintiffs'

Opposition dismissed their *quantum meruit* claim against Defendant Belmont Capital because

Plaintiffs have alleged an enforceable contract exists between CVP and Belmont Capital. (*See* Pls.'

Opposition at 33-34, n. 11.) Plaintiffs do not mention claims of *quantum meruit* or unjust enrichment against the other Belmont Defendants.

OraLabs Holding and CPSL have not disputed the existence of an enforceable agreement. (*See, e.g.,* OraLabs Holding Memo (Docket No. 63) at 18.) Plaintiffs' quasi-contractual claims against OraLabs Holding and CPSL are thus dismissed.

Claims for quantum meruit and unjust enrichment constitute a single cause of action. *See* Pls.' Opposition at 34; *see also Mid Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005). Further, because these claims are not separate grounds for recovery, when both are alleged, the unjust enrichment claim should be subsumed into the *quantum meruit* claim. *Learning Annex Holding, LLC v. Rich Global, LLC,* 2012 WL 92281, at *9-10 (S.D.N.Y 1991), *rev'd on other grounds*, 959 F.2d 425 (2d Cir. 1992). Even if Plaintiffs' unjust enrichment claim is not subsumed, claims for unjust enrichment where the plaintiff is seeking monetary relief are subject to a three-year statute of limitations. *See Lia v. Saporito*, 2012 WL 5467529 (E.D.N.Y. Nov. 6, 2012); *see also* N.Y. C.P.L.R. 214(3). Plaintiffs' unjust enrichment claim is time-barred.

Under New York law, *quantum meruit* claims based on a contract implied by law are governed by a six-year statute of limitations that begins to run when the plaintiff's final service has been performed. *See GSGSB, Inc. v. New York Yankees*, 862 F.Supp. 1160, 1171 (S.D.N.Y. 1994); *see also* N.Y. C.P.L.R. 213(2). Plaintiffs have alleged that sometime in December of 2005, Friess told Zhang that OraLabs was no longer seeking to reorganize its corporate structure. (FAC at ¶ 77.) In direct conflict with this allegation, and despite being allegedly informed that OraLabs was no longer in need of Plaintiffs' services, Plaintiffs claim that from December of 2005 through February of 2006 they continued to perform services for the OraLabs Defendants by attempting to salvage a reverse merger

between OraLabs and NVC Holdings and contacting the OraLabs Defendants to propose another company suitable for a reverse merger. (*Id.* at ¶¶ 76-77.)

Any *quantum meruit* cause of action that Plaintiffs could allege against the OraLabs Defendants began to run when Plaintiffs' final services for the OraLabs Defendants were performed. Plaintiffs do not allege that they performed any services after February 2006. Plaintiffs' *quantum meruit* claim accrued, at the very latest, in February of 2006. Plaintiffs did not initiate this action before the statute of limitations expired in February of 2012. This claim is time-barred by the applicable six-year statute of limitations.

Furthermore, recovery on the basis of *quantum meruit* is "not available to one who . . . undertakes unsuccessfully to act as an intermediary or broker in bringing about a transaction." *Towers v. Doroshaw*, 5 Misc.2d 241, 252, 159 N.Y.S.2d 367 (2d Dept. 1957). Zhang does not concede that he is merely a "finder" or "broker" as defined by courts interpreting N.Y.Gen.Oblig.Law § 5-701(a)(10). Nonetheless, Plaintiffs admit that the reverse merger they allege to have engineered between OraLabs Holding Corp. and NVC Holdings failed. (*See* FAC at ¶ 75.) Because Plaintiffs allege they were frozen out of a role in the PSHL transaction, they could not possibly recover damages under *quantum meruit*. Plaintiffs have, therefore, failed to state a claim. Accordingly, this claim is dismissed.

## CONCLUSION

Based on the above, the motions to dismiss from OraLabs Defendants, Belmont Defendants, and OraLabs Holding Corp. and CPSI are GRANTED. The Court declines to award the Defendants their reasonable attorneys' fees and costs.

Dated: New York, New York
March 13, 2013

SO ORDERED.

Andrew L. Carter, Jr.
United States District Judge